Gilmore, J.
Each of the counts in the indictment are sufficient in form, as they severally describe the offense intended to be charged substantially in the words of the section. The real question raised by the demurrer to the indictment is this: Is a county auditor an officer “ charged with the collection, receipt, safekeeping, transfer, and disbursement of the public money, or any part thereof belonging to the state,” within the meaning of the fifteenth section above quoted? If not, then the first count of the indictment charging the defendant, a county auditor, with converting to his own use money belonging to the State of Ohio, “which said money had then and there come into the possession and custody of the said defendant by virtue of his office,” does not state facts sufficient to constitute an offense within the meaning of the fifteenth section, and the demurrer was properly sustained; and the second count, which differs from the first only in charging that the money was converted to the use of the village of Millersburg, is liable to the same objection.
The machinery provided by law for the collection, receipt, safekeeping, and disbursement of the public money, is extensive and complicated; requiring in its operation the assistance of assessors, appraisers, boards of equalization, state and county auditors, state and county treasurers, and *271 ■other officers, each of whom has designated duties to perform, of a nature distinct from those to be performed by any others; and while there must be consecutive co-operation among them in order to produce the required result, yet each officer is responsible only for the faithful performance of the duties imposed upon him by law; and for unfaithfulness is only liable to the penalties denounced against unfaithfulness in his particular office.
In determining whether a county auditor, while acting in the line of his general duties, is an officer charged with the duties enumerated in the fifteenth section, we have carefully examined the many statutory provisions to which our attention has been called by counsel for the state, and find that none of them, when fairly construed, either expressly or impliedly impose those duties upon county auditors; and if they are amenable at all to the penalties provided for a violation of the provisions of the section, it can not be in a ease embraced in the very general language of the indictment under consideration, but in a case made by its own peculiar circumstances and relations; in which case, all the facts and circumstances necessary to show that the crime charged falls within the section, should be particularly set forth in the indictment.
The correctness of this conclusion will be made manifest by a comparative view of the past and present policy of the state respecting the collection, receipt, safekeeping, and disbursement of the public revenues.
Under the laws as they stood prior to the year 1858, the oath of office and official bond of a state or county treasurer were deemed sufficient, without the aid of criminal legislation, to insure the safety and proper application of all money that might come into their hands by virtue of their respective offices.
They were at liberty to choose their own places of deposit for the safekeeping of the public moneys, and usually it was deemed prudent to place the moneys for safety in some solvent bank, where it would be forthcoming when required.
*272 The auditor of state as to the treasurer of state, and. the county auditor as to the county treasurer, under the prior laws, stood in the same official relation to each other that they do now, and their relative duties were substantially the same. Under the prior laws, no one supposed that the county auditor was responsible for the public moneys in the hands of the county treasurer, and clearly the law imposed no such responsibility, and there was no complaint on the part of the public that the auditor of state or county auditors had not faithfully and satisfactorily performed their official duties; and hence, as to them, there existed no necessity for penal legislation. While this was the case in reference to state and county auditors, it was not so in reference to state treasurers, county treasurers, and other officers into whose hands the public moneys came by virtue of their offices or employment. Defalcations by these officers became frequent, the treasurers of state not excepted. The public money was squandered and lost; sometimes by conversion out and out to the official’s own use, but more frequently perhaps by trusting it temporarily to others, or loaning it to or depositing it in unsafe banks, or investing it in stocks, bonds, or merchandise. In these respects, the evils became insufferable, and, for the purpose of remedying them, the legislature, in 1858, passed two statutes—the first entitled “ an act to further provide for the better regulation of the receipt, disbursement, and safekeeping of the public revenue” (S. & C. 1596); the second entitled “an act to establish the independent treasury of the State of Ohio.”
While these acts only incidentally refer to the auditor of state and county auditors, and leave their duties as prescribed by previous statutes substantially unaffected, they virtually sweep away the previous legislation of the state in reference to the treasurer of state, county treasurers, and other custodians of the public moneys, and substitute their own provisions in their place. The provisions of these acts are much more stringent, in all respects, than those of previous acts, as applied to treasurers of state or county treasurers ; and construing them together, as they must be, it is *273 impossible to avoid the conclusion that the penalties provided by the fifteenth section of the independent treasury act. are particularly pointed at treasurers—state, county, township, city—and other officers whose duties are similar, and not at auditors of state or county auditors.
Sections 1, 2, and 3 of the independent treasury act indicate unmistakably the legislative intent; they arc substantially as follows:
Section 1 provides that the rooms assigned to the treasurer of state in the capitol at Columbus, together with the safes, vaults, and other proper and necessary means for the security and safe-keeping of the public money thereto belonging, shall constitute the treasury of the State of Ohio. And that the treasurer of state shall be required to use the treasury so constituted as the sole place for the deposit and safe-keeping of the money of the state. S. & C. 1605.
Section 2 makes it the duty of the county commissioners of each county in the state to provide a suitable room or rooms, with fire-proof vaults or safes, and all other necessary means for the security and safe-keeping of the public moneys in the county; and that the same shall constitute the treasury of the county; and that the public money paid into the county treasury, whether it belong to the county, state, or other party, shall bo kept by the county treasurer in the treasury of the county, and shall not be drawn therefrom, except in the manner provided by law. S. & C. 1606.
By section 3, the state treasurer and each county treasurer are required to keep safely in his treasury, without loaning, using, or depositing in banks or elsewhere, all public moneys of whatsoever character paid into said treasury, or otherwise, at any time placed in his possession and custody, till the same is ordered by the proper department or officer of the state government to be transferred or paid out according to law, etc. That he shall also be the fiscal agent to do and perform all the fiscal duties which may be *274 imposed by law, or by any other rule or regulation of the treasury made in conformity to law.
The state-house commissioners were required to furnish the state treasurers with such an office in the state-house at Columbus, and the county commissioners were required, under heavy penalties, as soon as practicable after the passage of the act, to provide such rooms as are required by section 2, in the public buildings of their respective counties, for the use of the county treasurers. The policy of the entire legislation on the subject contemplates the placing of all the public moneys belonging to the state or the counties in the proper treasury, to the exclusion of any other place; and, when placed there, section 8 prescribes the duties of the treasurers respectively in reference to such public moneys.
It will be observed that the penal provisions of section 15 in terms apply to violations of the provisions of this third section.
In view of these provisions, after a careful examination of all the statutes bearing on the subject, we fail to find ■anything that would authorize us to hold that, while acting in the line of his general duties, a county auditor is an officer “ charged with the collection, receipt, safe-keeping, transfer, or disbursement of the public money,” within the meaning of section 15, under which the defendant stands indicted.
Instead of being one of the officers whose general official ■duties would include him within the officers indicated in section 15, the entire legislation on the subject, and especially some of the provisions of section 15 itself, would seem to exclude him by implication, for the county auditor is placed at the door of the county treasury, and stands as a watchman or guardian upon it, without whose knowledge and consent, except in a few designated instances in which the auditor of state acts, no public money can legally either get into, or out of the county treasury; and hence his official books, in certain cases under section 15, will make a *275 prima facie case for the state in prosecutions against treasurers for embezzlement.
We have not been pointed to, nor are we aware of, the existence of any law by which a county auditor, by virtue of bis office, can come into tbe possession or custody of moneys belonging to tbe state. Tbe indictment fails to state facts showing bow it could possibly bave got into bis bands. If it was there at all, it was there without legal authority. We are not at liberty to presume that this was tbe case.
Neither tbe first nor second count of tbe indictment states facts sufficient to constitute an offense under section 15.
Tbe demurrer was properly sustained by tbe Court of Common Pleas.

Exceptions overruled.

Welch, C. J., White, Rex, and McIlvaine, JJ., com curred.